UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
EDWARD BAEZ,

                        Petitioner,

        -against-                        MEMORANDUM & ORDER
                                         10-CV-1231(JS)
WILLIAM BROWN, Superintendent
of Eastern New York
Correctional Facility,

                        Respondent.
-----------------------------------X
APPEARANCES
For Petitioner:      Edward Baez, pro se
                     03-A-5022
                     Eastern New York Correctional Facility
                     P.O. Box 338
                     Napanoch, NY 12458

For Respondent:      Ronnie J. Lamm, Esq.
                     Suffolk County District Attorney's Office
                     200 Center Drive
                     Riverhead, NY 11901

SEYBERT, District Judge:

        Edward Baez ("Petitioner") petitions this Court pro se

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For

the following reasons, his Petition is DENIED.

                          BACKGROUND

I. Factual Background

        In the early hours of July 10, 2002, Michael DiMartino

was driving to his home in Selden, New York.  (See Resp't's'

Return, Docket Entry 6, ¶ 6; see also 6/12/03 Trial Tr. 559:9-

12.[1])  On North Bicycle Path in Selden, a Dodge Intrepid and a van blocked DiMartino's car. (6/12/03 Trial Tr.: 561:7-562:18.) Two men, dressed as members of the New York City Police Department ("NYPD"), got out of the car, approached DiMartino's car, identified themselves as NYPD officers, and told him to get out of his car. (6/12/03 Trial Tr. 563:5-564:25.)  As he opened his door, Petitioner was pulled out of the car, had a hood put over his head and he was thrown into the back of the van, beaten, and tied up.  (6/12/03 Trial Tr. 565:13-17; Trial Tr. 567:2-570-11.)

DiMartino was forced at gunpoint to repeatedly call his wife; he was told to tell her to place money and her jewelry in their home mailbox.  (6/12/03 Trial Tr. 572:2-573:19.)  At about 2:50 a.m., DiMartino's wife ("Francesca") spoke with DiMartino on the phone.  DiMartino told her that he was being held at gunpoint and requested that she bring all the money outside to the front of home.  (6/10/13 Trial Tr. 136:12-137:7.) After this, Francesca's father, Domenico Malvizzo ("Malvizzo"), who was also at the DiMartino's home, saw a man get out of a car and approach the house; Malvizzo went outside to meet him.

---

[1] In citing to the trial transcripts, the Court has used the printed transcripts that were sent to the Court and has indicated the date and page numbers for each cite. Additionally, there is an overlap of page numbers for June 25, 2003.  One bound transcript indicates pages 1890-2004 and the second bound transcript indicates page 1930-2068.

(6/11/03 Trial Tr. 250:10-21.) The house alarm sounded and the man who met Malvizzo got back into the car and left (6/11/03 Trial Tr. 258:3-6.) At trial, Malvizzo identified the man with whom he spoke as Richard Garcia, a co-defendant in the underlying case. (6/11/03 Trial Tr. 260:19-21.)

The police were summoned and, after they arrived, Francesca received another call asking her to put money in the mailbox. (6/10/03 Trial Tr. 144:9-25.) She then received another call from a man who said that she was stupid for calling the police and that the kidnappers were going to hurt her husband. (6/10/03 Trial Tr. 145:9-22.)

Police found DiMartino's car in a nearby schoolyard. (6/11/03 Trial Tr. 317:13-14.) Looking for anyone connected to the kidnapping, Officer Francis Conway patrolled the surrounding area by car. He noticed a car driving erratically and without its lights on. (6/11/03 Trial Tr. 321:5-9.) Conway followed the car and noticed that the two males inside constantly looked back at him through the rearview mirror. (6/11/03 Trial Tr. 322:118-323:1.) Once additional police cars arrived, Conway pulled the suspect car over, and noticed that it was a gold Dodge Intrepid. (6/11/03 Trial Tr. 327:14-328:9.) Officer Conway identified the driver as Rafael Mella-Rodriguez, a co-defendant in the underlying trial, and the passenger as Richard Garcia. (6/11/03 Trial Tr. 329:24-330:5; 339:20-23.) Garcia

told Conway that they dropped off a third passenger, at a Walgreen's. (See, e.g., 6/11/03 Trial Tr. 349:22-25.)

After questioning, the officers found the Mella-Rodriguez's and Garcia's stories were conflicting. (6/11/03 Trial Tr. 337:18-22.) Conway then opened the trunk of the Dodge Intrepid looking for the potential kidnapping victim (who was not there). (6/11/03 Trial Tr. 353:11-25.) Conway did see an NYPD hat, NYPD t-shirt, and a shield holder. (6/11/03 Trial Tr. 354:8-15.) Conway picked up the hat and shirt, which uncovered a semi-automatic handgun on the floor of the trunk and a set of car keys. (Trial Tr. 354:18-22.) The officers arrested Mella-Rodridguez and Garcia for possession of the handgun. (Trial Tr. 355:2-4.)

Officer Taormina, after assisting Conway in arresting Mella-Rodriguez and Garcia, returned to the area where Conway first saw the arrestees driving suspiciously. (6/11/03 Trial Tr. 412:7-13.) He saw a Lincoln Town Car parked in an awkward location nearby. (6/11/03 Trial Tr. 412:25-413:8.) The police also found a set of keys in the Dodge Intrepid and Officer Taormina used this set to open the trunk of the Lincoln. (6/11/03 Trial Tr. 414:7-415:11.) Petitioner's fingerprint was found on the rearview mirror and his hair was found in the car. (Resp't's Return, Docket Entry 6, ¶¶ 49-50.)

4

DiMartino was held in the van for approximately six-to-ten hours. (6/12/03 Trial Tr. 577:19-21.) He was then taken to a building in Brooklyn from where he was eventually able to escape despite having been bound by plastic ties. (6/12/03 Trial Tr. 591:2-593:24.) That morning, NYPD Officer Victoria Lehane went to 943 Willoughby Street in Brooklyn--where DiMartino had been held--where she saw a plastic tie on the street and assorted debris that matched items noted by DiMartino. (Resp't's Return ¶ 32.) Detective Brian McMenemy's investigation led to Petitioner. (Resp't's Return ¶ 33.) After being taken into custody, McMenemy advised Petitioner, in English and Spanish, of his Miranda rights. (Resp't's Return ¶ 34.)

Petitioner was then taken to the 83rd Precinct and he was then once again advised of his Miranda rights, in Spanish, and he wrote his answers and signature on the rights card. (Resp't's Return ¶ 35.) Petitioner then explained what happened. McMenemy took notes of Petitioner's explanation and then compiled a written statement for Petitioner. (Resp't's Return ¶ 36.) Petitioner was read the statement, in Spanish, after which he signed it. (Resp't's Return ¶ 36.) In the statement, Petitioner admitted that he agreed to help for money and when he approached the van, he saw a man tied up and bloody in the backseat. (Resp't's Return ¶ 38-39.) He admitted that

he drove the van with the man tied up in the car.  (Resp't's Return ¶ 40.)

## II. Legal Background

Petitioner was charged with Kidnapping in the first degree (New York Penal Law ("N.Y.P.L.") § 135.25); Kidnapping in the second degree (N.Y.P.L. § 135.20); Robbery in the first degree (N.Y.P.L. § 160.15); Criminal Use of a Firearm in the first degree (N.Y.P.L. § 265.09); two counts of Criminal Possession of a Weapon in the third degree (N.Y.P.L. § 265.02); and Criminal Impersonation in the first degree (N.Y.P.L. § 190.26).  (See, e.g., 6/25/03 Trial Tr. 2032:12-2052:2.)

On September 4, 2003, at the conclusion of a jury trial, Petitioner was found guilty of both kidnapping charges and both criminal possession charges.  (Resp't's Br., Docket Entry 6-1, Prelim. Statement.)  At sentencing, the court dismissed the charge of kidnapping in the second degree. (Resp't's Br., Prelim. Statement.)  Petitioner was sentenced to concurrent terms of eighteen years-to-life, two-to-six years, and two-to-six years, respectively.  (Resp't's Br., Prelim. Statement.)

On May 10, 2006, Petitioner appealed the judgment. (See Appellant's Br., Docket Entry 13-1.[2])  Petitioner argued

_____

[2] The page numbers for Appellant's Brief are those generated by the Electronic Case Filing System.

that: (i) he was denied his right to confrontation, under the Sixth Amendment, when the trial court denied his attempt during cross-examination, to demonstrate that his statements to the police were involuntary; (ii) he was denied his right to a fair trial, under the Sixth Amendment, as to lay witness testimony; (iii) the jury's determination was legally inconsistent or, alternatively, as he was denied effective assistance of counsel, under the Sixth Amendment; (iv) he was denied his right to a fair trial, under the Sixth Amendment, as to the prosecutor's summation; (v) the trial evidence was legally insufficient to support a conviction; and (vi) his sentence was harsh and excessive. (See, e.g., Appellant's Br. at 2-3.)

On February 17, 2009, the Appellate Division affirmed the judgment. People v. Baez, 59 A.D.3d 635, 873 N.Y.S.2d 216 (2d Dep't 2009). The court held the evidence was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt. Id. at 635. It found that "[Petitioner's] contention that the jury verdict was repugnant is unpreserved for appellate review[.]" Id. (internal citations omitted). The court also substantively denied the claim. Id. (internal citations omitted). The court further held "the trial court did not deny [Petitioner] the right to confront the witnesses against him by its decision to limit his cross-examination of a certain prosecution witness." Id. (citations omitted). The court

denied Petitioner's claim that he was denied a fair trial as to the lay witness's testimony. Id. at 636 (internal citation omitted). The court also held that Petitioner's claim as to the prosecutor's summation was unpreserved and went on to deny it substantively as well. Id. (internal citations omitted). Finally, the court found that the sentence was not excessive and that Petitioner's ineffective assistance of counsel claim was without merit. Id.

Petitioner applied for leave to appeal to the New York Court of Appeals, which denied the application on April 14, 2009. People v. Baez, 12 N.Y.3d 814, 908 N.E.2d 928, 881 N.Y.S.2d 21 (N.Y. 2009).

III. The Petition[3]

Petitioner argues that: (i) he was denied his right to confrontation, under the Sixth Amendment, when the trial court denied his attempt, during cross-examination, to demonstrate that his statements to the police were involuntary; (ii) he was denied his right to a fair trial, under the Sixth Amendment, as to lay witness testimony; (iii) he was denied effective assistance of counsel, under the Sixth Amendment; (iv) the trial evidence was legally insufficient to support a conviction; (v)

---

[3] Petitioner did not file a supporting brief with the Petition. In the Petition, Petitioner cited his State Appellate brief (see, e.g., Pet. at 3), which the Court reviewed and to which the Court cites, where appropriate.

he was denied his right to a fair trial, under the Sixth Amendment, as to the prosecutor's summation.   (Pet., Docket Entry 1, at 3-8.)

DISCUSSION

I.  Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, --- U.S. ----, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a).

A federal court may grant a writ of habeas corpus to a state prisoner when prior state adjudication of the prisoner's case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. at § 2254(d)(1).  "This is a 'difficult to meet,' [] and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the

doubt[.]'" *Cullen v. Pinholster*, --- U.S. ----, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (quoting *Harrington*, 131 S. Ct. at 786; *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002)).

During a review of a petition for a writ of habeas corpus, federal courts presume that the state court's factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1).

A. Exhaustion

1. Standard

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in state court. *See* 28 U.S.C. § 2254(b)(1)(A). "Exhaustion requires a petitioner fairly to present the federal claim in state court." *Jones v. Keane*, 329 F.3d 290, 294 (2d Cir. 2003). Presentation means a petitioner "has informed the State court of both the factual and the legal premises of the claim he asserts in Federal court." *Id.* at 295 (internal quotation marks and citations omitted).

B. Procedural Default

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will

result in a fundamental miscarriage of
justice.

Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.
Ed. 2d 640 (1991).

The Second Circuit "has held that 'federal habeas
review is foreclosed when a state court has expressly relied on
a procedural default as an independent and adequate state
ground, even where the state court has also ruled in the
alternative on the merits of the federal claim.'" Glenn v.
Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (quoting Velasquez v.
Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); citing Harris v.
Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10, 103 L.
Ed. 2d 308 (1989); Wedra v. Lefevre, 988 F.2d 334, 338-39 (2d
Cir. 1993)).

II.  Ground One: Right to Confrontation

Petitioner asserts that he was deprived of his Sixth
Amendment right to confrontation when the trial court foreclosed
the defense from cross-examining McMenemy about circumstances
Petitioner claims would demonstrate that his statement to police
was involuntary.  (Pet. at 3.)

A.  Standard

"The Confrontation Clause of the Sixth Amendment
guarantees the right of an accused in a criminal prosecution 'to
be confronted with the witnesses against him.'  The right of

11

confrontation . . . is secured for defendants in state as well as federal criminal proceedings[.]" Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986) (quoting Pointer v. Texas, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)). This "'means more than being allowed to confront the witness physically.'" Id. at 678 (quoting Davis v. Alaska, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1973)). "'Indeed, the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" Id. (quoting Davis, 415 U.S. at 315-16 (emphasis in original)).

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

Id. at 679 (quoting Delaware v. Fensterer, 474 U.S. 15, 20, 106 S. Ct. 292, 295, 88 L. Ed. 2d 15 (1985) (per curiam) (emphasis in original)).

"The 'extent' of cross-examination 'rests in the sound discretion of the trial judge.'" Watson v. Greene, 640 F.3d 501, 510 (2d Cir. 2011) (quoting District of Columbia v. Clawans, 300 U.S. 617, 632, 57 S. Ct. 660, 81 L. Ed. 843 (1937)). "To determine the propriety of cross-examination, as with other determinations of admissibility of evidence, courts balance prejudice versus probative value . . . A court's decision to restrict cross-examination will be reversed only when the court has abused its 'broad discretion.'" Id. (quoting United States v. Figueroa, 548 F.3d 222, 226 (2d Cir. 2008); citing Wade v. Mantello, 333 F.3d 51, 62 (2d Cir. 2003); Brinson v. Walker, 547 F.3d 387, 394 (2d Cir. 2008)) (internal citations omitted).

For habeas review, "[the court does] not sit to review the trial judge's exercise of discretion, but rather to assess whether the state courts' denial of [Petitioner]'s Confrontation Clause claim was reasonable. As the Supreme Court has recently stressed, even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. at 511 (quoting Harrington 131 S. Ct. at 784) (emphasis in original).

B.  Analysis

Petitioner's trial counsel, Frank Murphy, asked Detective McMenemy a question related to the arrest of the driver of the vehicle from which Petitioner was arrested.  (See Appellant's Br. at 19-20.)

**Mr. Murphy:** . . . Meanwhile, you were arresting, putting the driver into another police car; isn't that right?

**Det. McMenemy:** I didn't have anything to do with the driver. I don't know what happened to him.

**Mr. Murphy:** well, he was transferred down to the 83rd [Precinct], too?

**[Prosecutor]:** Objection, your honor. He is testifying.

**The Court:** Sustained.

(See Appellant's Br. at 18-20.)  Petitioner argues that "defense counsel attempted to demonstrate that the police actions were so heavy handed as to create a coercive atmosphere . . . [by which] the jury may have concluded that the arrest . . . of [the driver] . . . signaled to [Petitioner] that the rule of law did not apply to Hispanic immigrants."  (Appellant's Br. at 21.)  Moreover, "the jury may have further concluded that [Petitioner] felt his Miranda warnings were no more potent than the driver's Fourth Amendment right[s]."  (Appellant's Br. at 21.)

Here, as in Watson, "a reasonable basis for affirming the trial judge's exclusion of the proposed cross-examination may be readily inferred."  640 F.3d at 511.  Most importantly,

McMenemy was not the van driver's arresting officer and, thus, McMenemy's testimony as to the driver's arrest was reasonably excluded from his testimony.  If defense counsel wanted to ask this to the driver's arresting officer, <u>arguendo</u>, a stronger case might have been made.  Moreover, as the trial court noted, Petitioner's statements were made "several minutes, a half-hour, 40 minutes before this atmosphere that you are talking about, was set." (<u>See</u> Appellant's Br. at 20.)  The trial court clearly had the discretion to deny this "marginally relevant" testimony. <u>Van Arsdall</u>, 475 U.S. at 678.  The Appellate Division's holding, therefore, was not "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The Petition on this ground is DENIED.

III.  <u>Ground Two: Right to Fair Trial (Lay Witness Testimony)</u>

In Ground Two of his Petition, Petitioner asserts that he was denied his right to a fair trial when the Court permitted Police Officer Jane Messina to testify about "cleansing marks" on the van window.  (Pet. at 4.)

A.  <u>Standard</u>

"If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

15

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge[.]"

Fᴇᴅ. R. Eᴠɪᴅ. 701 ("Opinion Testimony by Lay Witness").

"If circumstances can be presented with greater clarity by stating an opinion, then that opinion is helpful to the trier of fact . . . Allowing witnesses to state their opinions instead of describing all of their observations has the further benefit of leaving witnesses free to speak in ordinary language." Virgin Islands v. Knight, 989 F.2d 619, 630 (2d Cir. 1993) (citing United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982); Stone v. United States, 385 F.2d 713, 716 (10th Cir. 1967)).

B.  Analysis

In trying to describe why she took a picture of markings on a car window, Officer Messina testified, "I was trying to show the markings.  It had like cleansed markings . . . [l]ike circular.  As if you were washing a window, but you didn't clean it completely.  So, you could see circular motions."  (1/20/03 Trial Tr. 1432:3-9.)  The trial court permitted this testimony.  (See 1/20/03 Trial Tr. 1432:19-21.) Petitioner argues this testimony was improperly permitted

because it expressed a lay witness' opinion about what caused the smudges on the window. (See, e.g., Appellant's Br. at 26.)

The Court disagrees. The witness answered a question about why she took the picture, not what the picture actually showed. The trial court was permitting the witness to explain what she perceived and, thus, why she took the picture of the car window. This accords with Rule 701(a). As the testimony would be admissible in Federal court, it cannot be said, logically, that the Appellate Division's determination was "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner's claim is DENIED.

## IV. Ground Three: Effective Assistance of Counsel

In Ground Three of the Petition, Petitioner asserts that trial counsel was ineffective because he failed to object to the "repugnant verdict." (Pet. at 5.)

### A. Standard

"It has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (citing Reece v. Georgia, 350 U.S. 85, 90, 76 S. Ct. 167, 170, 100 L. Ed. 77 (1955); Glasser v. United States, 315 U.S. 60, 69-70, 62 S. Ct. 457, 464-65, 86 L. Ed. 680 (1942); Avery v. Alabama, 308 U.S. 444, 446, 60 S. Ct. 321, 322,

84 L. Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 57, 59-60, 53 S. Ct. 55, 77 L. Ed. 158 (1932)).

"[T]he proper standard for attorney performance is that of reasonably effective assistance[;] . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688.

Petitioner must also establish that there is a reasonable probability that, but for counsel's performance, the outcome of the proceeding would have been different. See id. at 688-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks and citation omitted).

B. Analysis

The Appellate Division held that Petitioner's claim that the jury verdict was repugnant was unpreserved for

appellate review. <u>Baez</u>, 873 N.Y.S.2d at 217. The Petition regards solely the claim of ineffective assistance of counsel as to trial counsel's failure to raise the repugnancy issue. (See Pet. at 5.) The Appellate Division held that, as to ineffective assistance of counsel, the claim was "without merit." <u>Baez</u>, 873 N.Y.S.2d at 217. The Petition is preserved and ripe for substantive review.

However, Petitioner fails to meet his <u>Strickland</u> burden. In New York State trials, if defense counsel argues a verdict is repugnant, the court "resubmit[s] the matter to the jury to obtain a consistent verdict, <u>even if that may require</u> <u>changing an 'acquittal', on one or more counts, to a</u> <u>conviction</u>." <u>People v. Alfaro</u>, 66 N.Y.2d 985, 986, 489 N.E.2d 1280, 499 N.Y.S.2d 378, (N.Y. 1985) (citing <u>People v. Salemmo</u>, 38 N.Y.2d 357, 342 N.E.2d 579, 379 N.Y.S.2d 809 (N.Y. 1976); <u>People v. Robinson</u>, 45 N.Y.2d 448, 382 N.E.2d 759, 410 N.Y.S.2d 59 (N.Y. 1978) (emphasis added)). The Court must strongly presume trial counsel acted reasonably. <u>Strickland</u>, 466 U.S. at 689. The Court presumes, therefore, that trial counsel did not want to give the jury another opportunity to convict Petitioner on additional counts. See <u>id.</u> (The Court must "reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.") The Appellate Division's holding, therefore, was not "an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner's claim is DENIED.

V.  Ground Four: Sufficiency of Evidence

Petitioner asserts in Ground Four of his Petition that the People failed to prove his guilt beyond a reasonable doubt. (Pet. at 6.)

A.  Standard

The Court "review[s] the decision of the state court under the federal sufficiency standard set forth by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)." Gutierrez v. Smith, 702 F.3d 103, 113 (2d Cir. 2012) (citing Epps v. Poole, 687 F.3d 46, 50 (2d Cir. 2012)). "The relevant question under Jackson is whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citing Jackson, 443 U.S. at 319) (emphasis in original). "When considering the sufficiency of the evidence of such a state conviction, a federal court 'must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor,' and, in doing this, 'must look to state law to determine the elements of the crime.'" Id. (citing

20

Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000)).

"[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.

B.  Analysis

Petitioner argues that "the evidence . . . was entirely circumstantial, equally susceptible of innocent interpretation and insufficient to prove" the statutory requirements of guilt. (Appellant's Br. at 40-41.) Petitioner asserts that "[his] statement to the police was not a confession, but rather an admission that included [an] inculpatory statement [] from which guilt had to be inferred." (Appellant's Br. at 41.) Petitioner argues the innocent alternative is more compelling. (See Appellant's Br. at 42.)

After reviewing the record, the Court finds that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Gutierrez, 702 F.3d at 113. Moreover, the Court must presume the fact-finders resolved conflicting inferences in favor of the prosecution. Jackson,

443 U.S. at 326. The Court "must defer to that resolution." Id. Petitioner's claim is DENIED.

VI. Ground Five: Right to Fair Trial (Summation)

In Ground Five, Petitioner asserts that the prosecutor's remarks during summation deprived Petitioner of his right to a fair trial. (Pet. at 7.)

A. Standard

The United States Supreme Court "has recognized that prosecutorial misconduct may 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'" Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102, 3109, 97 L. Ed. 2d 618 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871, 40 L. Ed. 2d 431 (1974)). "To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Id. (quoting United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380, 87 L. Ed. 2d 481 (1985)).

As to habeas review, specifically, this Court must determine whether the alleged error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S. Ct. 1710, 1721, 123 L. Ed. 2d 353 (1993)).

Furthermore, "where the defense summation makes arguments and allegations against the government, the prosecutor may respond to them in rebuttal." United States v. Tocco, 135 F.3d 116, 130 (2d Cir. 1998) (citing United States v. Rivera, 971 F.2d 876, 883 (2d Cir. 1992); United States v. Bagaric, 706 F.2d 42, 60 (2d Cir. 1983)). The Court "review[s] the allegedly improper prosecutorial statements during summation in the context of the entire argument[.]" Id. (citing United States v. Pena, 793 F.2d 486, 490 (2d Cir. 1986)).

B. Analysis

The Appellate Division held that Petitioner's claim was unpreserved for appellate review. Baez, 873 N.Y.S.2d at 217. As Petitioner failed to preserve his appeal, "federal habeas review is foreclosed." Glenn, 98 F.3d at 724. The Appellate Division denied the claim substantively as well by holding that the "remarks were fair comment on the evidence, permissible rhetorical comment, or responsive to the defense counsel's summation[.]" Baez, 873 N.Y.S.2d at 217 (quoting People v. Gillespie, 36 A.D.3d 626, 627, 831 N.Y.S.2d 83 (2d Dep't 2007); citing People v. Dorgan, 42 A.D.3d 505, 838 N.Y.S.2d 787 (2d Dep't 2007); People v. McHarris, 297 A.D.2d 824, 825, 748 N.Y.S.2d 57 (2d Dep't 2002); People v. Clark, 222 A.D.2d 446, 447, 634 N.Y.S.2d 714 (2d Dep't 1995); People v. Vaughn, 209 A.D.2d 459, 460, 619 N.Y.S.2d 573 (2d Dep't 1994)).

Substantively, the Appellate Division's holding was not contrary to Federal law. During cross-examination, Petitioner's trial counsel asked Detective McMenemy about corrections on Petitioner's written statement. Particularly, two lines were struckthrough. This strikethrough indicated that Petitioner wanted these lines removed from the statement. About that correction, McMenemy testified "I was sure [Petitioner] told me that [] he knew a person by the name of Brujo . . . [A]fter [the statement] was read to him, he told me that, 'no, I don't really know Brujo[]' . . . So I just crossed it out." (Resp't's Br. at 37.)

In his summation, Petitioner's trial counsel argued that the detectives in the case forced an involuntary statement from Petitioner. Trial counsel argued, over eight transcript pages, that the detectives and police officers' testimony, as to the voluntariness of Petitioner's statement, were unreliable. (6/25/03 Trial Tr. 1944:12-1951:25.) Trial counsel argued that Detective McMenemy added the name "Brujo" because McMenemy "is starting to make a case[.]" (6/25/03 Trial Tr. 1948:23-24.) As Respondent argues, the challenged portions of the prosecutor's summation were responsive to defense counsel's summation. (See Resp't's Br. at 33.) The prosecutor argues that Petitioner knowingly and voluntarily made his statements after he was given his Miranda rights in Spanish. (See 6/25/03

Trial Tr. 1979:18-1980:4 ("[McMenemy] had some working knowledge of Spanish, and decided to read the back of the [Miranda] card. But he didn't find that sufficient . . . He had Police Officer Correa read the card again, in Spanish.")) The prosecutor briefly mentions Brujo: "[o]f course, he is not going to admit to knowing Brujo. That is why he had Detective McMenemy take Brujo's name out . . . If he admits to knowing Brujo, he can't say he knew [nothing] about the safe house." (6/25/03 Trial Tr. 1993:21-25.) The prosecutor is giving an alternative reason why Brujo's name was struckthrough in the statement--an alternative that weighs against defense counsel's argument that the statement was involuntary. On procedural and substantive grounds, therefore, the claim is DENIED.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. Because there can be no debate among reasonable jurists that Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      May __29__, 2014
            Central Islip, NY